IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

JULIO ALVEREZ RAVEIRO, #1182674     §
        §
        §
v.         §     CIVIL ACTION NO.  G-06-581
        §
        §
NATHANIEL QUARTERMAN,     §
DIRECTOR OF TDCJ-CID     §

## REPORT AND RECOMMENDATION

Before the Court is the Petition for a Writ of Habeas Corpus of Julio Alverez Raveiro, a prisoner in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ-CID").  Respondent filed a Motion for Summary Judgment with Brief in Support seeking dismissal with prejudice of Petitioner's claims.  (Instrument No. 8).  Petitioner filed an Opposition to Respondent's Motion for Summary Judgment.  (Instrument No. 11).  Having carefully considered the Petition, the parties' motions and briefs, and the state court records, the Court submits its Report and Recommendation to the District Court.

The Court has jurisdiction over the parties and subject matter pursuant to 28 U.S.C.§§ 2241 and 2254.  The State has custody of Petitioner pursuant to a judgment and sentence entered by the 212th Judicial District Court of Galveston County, Texas, in Cause Number 02CR0410, on July 1, 2003.  Petitioner was charged with murder and two prior convictions were also alleged in the indictment for purposes of enhancement.  Petitioner pled "not guilty" and he was tried to a jury on

the charge.  After hearing all the evidence, the jury found him guilty and punishment was assessed at seventy-five (75) years confinement.

Petitioner appealed his conviction.  On January 13, 2005, the Fourteenth Court of Appeals of Texas affirmed his conviction.  *Raveiro v. State*, 14-03-0866-CR, 2005 WL 66483 (Tex.App.–Houston [14th Dist.] 2005).  Petitioner filed a Petition for Discretionary Review ("PDR"), which was refused by the Texas Court of Criminal Appeals ("TCCA") on September 28, 2005. *Raveiro v. State*, P.D.R. No. 140-05.

On February 1, 2006, Petitioner filed a state writ of habeas corpus pursuant to Article 11.07 of the Texas Code of Criminal Procedure.  *Ex parte Raveiro*, Applic. No. 64,336-01.  The trial court, adopting the State's Answer (*Id*. at 38-41), submitted its Findings of Fact and Conclusions of Law to the TCCA recommending that relief be denied.  *Id*. at 50.  On May 24, 2006, the TCCA denied Petitioner's writ without written order based on the findings of the trial court without hearing.  *Id*. at cover.

Petitioner submitted the instant writ for filing in federal court on August 15, 2006.  He alleges that he is entitled to federal habeas relief based on the following grounds: (1) the evidence was legally insufficient to support the conviction; (2) he was denied the right to consular notification under the Vienna Convention; (3) the trial court erred in admitting a motel receipt; (4) he was provided ineffective assistance of counsel at trial because counsel: (a) failed to object to the admission of a taped statement Petitioner gave police, (b) failed to object and preserve error when the State offered and admitted the .22 caliber pistol into evidence, and (c) failed to object and preserve error during *voir dire* when the State referred to extraneous offenses; (5) the trial court erred in admitting the taped statement because it was inaudible and did not include the *Miranda*

2

warnings; and (6) he was denied the right of confrontation.  Fed. Writ Pet. at 7-8.

*Insufficiency of the Evidence Issue*

Petitioner alleges that the evidence presented at trial was insufficient to support the conviction.  Fed. Writ Pet. at 7.  In particular, Petitioner claims the evidence did not show that he acted as a party or principal, but instead  "supports a reasonable hypothesis that [Petitioner] did not know in advance that any robbery or killing was contemplated, did not agree to commit the offense and did not participate in it."  Pet'r Memo. at 3.  Respondent contends that the evidence was legally sufficient and, as such, Petitioner's claim is without merit.  Resp's Mot. Sum. J. at 6-9.

The Fourteenth Amendment's guarantee of due process provides that no criminal defendant may be convicted and punished except upon proof sufficient to persuade a rational fact-finder of the defendant's guilt beyond a reasonable doubt.  *Tibbs v. Florida*, 457 U.S. 31, 45 (1982).  In determining a claim for legal insufficiency, a federal habeas court decides whether "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary" for the crime's essential elements.  *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979).  All credibility choices must be construed in favor of the verdict.  *United States v. Cyprian*, 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied*, 531 U.S. 822 (2000).

On direct appeal, Petitioner alleged that the evidence was both legally and factually insufficient to support the conviction.  The state court, reviewing the evidence under *Jackson* for legal sufficiency and also under the more rigid Texas standard for factual sufficiency,[1] determined

---

[1] A claim of factual insufficiency is a creation of Texas state law.  *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).  No such distinction is recognized by federal courts and, therefore, claims of factual insufficiency are not cognizable when seeking federal habeas relief.  *Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993).

that the evidence presented was both legally and factually sufficient to support the conviction. *Raveiro v. State*, No. 14-03-00866-CR, 2005 WL 66483 (Tex.App.–Houston [14th Dist.] 2005, pet. ref'd).   A federal court cannot grant habeas relief unless Petitioner shows that the state court's judgment (1) resulted in a decision contrary to, or involved an unreasonable application of, federal law, or (2) was unreasonable in light of the evidence.  28 U.S.C. § 2254(d)(1)-(2).  Here, Petitioner has merely reiterated the same claim he presented in the state court and he has failed to make an attempt to establish how the state court's determination was either contrary to or involved an unreasonable application of federal law or that it was unreasonable in light of the evidence.

Notwithstanding this fact, having reviewed all the evidence presented in this case, this Court finds that it was legally sufficient under *Jackson* to convict Petitioner of the offense of murder under Texas law.  Tex. Penal Code §§ 19.02(b)(1)-(2); 7.02(a)(2); 15.02(a)(1).  In particular, the evidence presented to the jury, as comprehensively set forth in the opinion of the state appellate court, included the following:

> Delena Kent was present in Wichita Falls when [Raveiro] planned and conspired with "Snail" and "T" to go back to Dickinson and rob drug dealers.  Thereafter, she accompanied [Raveiro] and the two men back to Dickinson.  In Dickinson, before the murder, [Raveiro] went to a house and picked up a silver gun, acquired a .22 caliber pistol from Kent's brother, and purchased bullets.  A few nights later, after deciding the complainant was the "number one" target for the group to rob, [Raveiro] called him and ordered an ounce of crack cocaine to be delivered to his house.  When the complainant arrived, [Raveiro] was waiting in the front yard and "Snail" and "T" were hiding behind an abandoned car.  The complainant gave [Raveiro] the cocaine.  [Raveiro] believed it was not an ounce, but gave Kent a piece to sample.  When she returned, Kent saw "Snail" and "T", who were both armed with handguns, beating up the complainant in the front yard, checking his pockets, and telling him they knew he had more money.  Kent testified [Raveiro] never laid a hand on the complainant, but instead, watched without attempting to stop the beating.  However, her story conflicts as to whether [Raveiro] was

armed or not.  After beating the complainant unconscious, "Snail" and "T" dragged the victim to his own car and placed him in the back seat.  "Snail" and "T" got into the complainant's car and forced Kent to drive.  She testified [Raveiro] drove in his own car and led them to the edge of a field not far from where he had obtained the silver handgun.  Kent testified [Raveiro] pointed and turned his blinker on towards the field when "Snail" and "T" told her to turn in.  She did, then stopped the car, jumped out, and ran to [Raveiro's] car, which was waiting at the entrance.  A short time later she heard a gun shot.[FN1]

> FN1.  The complainant was shot at close range in the back of the head with a .38 caliber handgun, the same caliber as the silver handgun.

Upon their arrival at [Raveiro's] house, [Raveiro] poured transmission fluid and soap on the driveway to clean off the victim's blood.[FN2]

> FN2.  Investigators recovered a plastic container of brake fluid in [Raveiro's] car.

Appellant told Kent to help him and to stay close or he would kill her and her brother, the same way he did the complainant.  Thereafter, [Raveiro] transported "Snail" and "T" to a motel.  The next day, Kent and [Raveiro] drove around town because [Raveiro] wanted to find out what people were saying about the complainant's death.

Investigators searched a local motel room registered to [Raveiro].  There, investigators collected a comforter, pillow case, and shirt, all of which had blood stains.  However, none of the items were tested.

During the investigation, [Raveiro] gave three interviews concerning his knowledge of the murder.  In his first interview, [Raveiro] told investigators he had nothing to do with the murder.  In his second interview, [Raveiro] told investigators that "Snail" and "T" robbed him and Kent and murdered the complainant.  During the third interview, [Raveiro] told investigators that he brought "Snail" and "T" to Dickinson from Wichita Falls because they had a plan to rob drug dealers, but not the complainant.[FN3]

> FN3.  [Raveiro] said they planned to set up phony drug deals with two Hispanic men from New York by saying they had 100 kilos of cocaine.  When the men came, they were going

to rob them of all their money.

He also claimed that after the beating, "Snail" and "T" left with the victim while he stayed at his house. However, when the investigators falsely told him his tire tracks were found at the crime scene, he changed his story and said he drove around looking for them and found them at the field. However, at this point in the investigation, investigators had not disclosed to [Raveiro] or anyone else the exact location of the murder.

During his third interview, [Raveiro] claimed he was not involved in the murder and that it was gang related. [Raveiro] said "Snail" and "T" were "Crips" and rivals to complainant's gang, the "Bloods." Kent also testified that at some point, [Raveiro] told her he lived in "Crip territory." The complainant was wearing red on the night of his murder and "Snail" and "T" were wearing blue.[FN4]

> FN4.  The Bloods' colors are red and the Crips' are blue.

Appellant said he didn't know "Snail" and "T" were Crips before the complainant arrived with the drugs.

At trial, [Raveiro] attacked Kent's credibility. When Kent testified, she was currently serving a sentence for an unrelated crime, had previous convictions, was a prostitute, and drug addict. Kent smoked crack minutes before the complainant was beaten and killed. [Raveiro] impeached Kent about differences in details between her testimony and previous statements she made to investigators.[FN5]

> FN5.  Kent responded by saying that at the beginning, her story was different because she was afraid [Raveiro] would kill her and her brother.

Also, while some of Kent's testimony was consistent with the evidence and [Raveiro's] statements to investigators, some of her statements could not be verified. Kent testified the conspirators cleaned blood off themselves in [Raveiro's] sink; however, a P-trap test detected no blood in [Raveiro's] sink. Similarly, Kent testified "Snail" and "T" had blood on them when they entered [Raveiro's] car after "Snail" shot the victim, but no blood was found on the rear passenger seat or in [Raveiro's] vehicle.

The evidence established that [Raveiro] entered into an agreement in Wichita Falls with "T" and "Snail" to rob drug dealers in Dickinson,

> and pursuant to that agreement, transported "T" and "Snail" to
> Dickinson.  [Raveiro] called the victim, a drug dealer, to his house,
> and watched as "T" and "Snail" assaulted him.  [Raveiro] led "T" and
> "Snail" to the field where the victim was murdered by a gunshot.
> The handguns used by "T" and "Snail" during the offense were
> obtained by [Raveiro]  days before the offense.  After the murder,
> "T" and "Snail" ran to and entered [Raveiro's] vehicle.  [Raveiro]
> told them "job well done" and transported them to his house where
> he attempted to remove the victim's blood from his driveway.

*Raveiro v. State*, 2005 WL 66483 at *3-4.  Viewing all the evidence presented in this case, as well

as the credibility choices, in a light most favorable to the verdict, this Court concludes that a rational

jury could have found sufficient evidence existed which established that Petitioner was criminally

responsible for the murder under Texas law.  Therefore, Petitioner's claim that the evidence was

legally insufficient to support his conviction is simply without merit.

The Court **RECOMMENDS** that Respondent's Motion be **GRANTED** on this issue.

### *Vienna Convention Issue*

Petitioner claims he was denied the right to consular notification under the Vienna

Convention.  Petitioner alleged that the police detective "knew [he] spoke with an acent [sic], so

without delay[,] he should have informed [him] that he had a right to consult with his Consulate."

Pet'r Memo. at 9.   Petitioner also appears to claim that because his right under the Vienna

Convention was violated, his statements to police should have been excluded at trial.  Respondent

contends that Petitioner's claim is barred by *Teague*.  Resp's Mot. Sum. J. at 9.  To the extent that

Petitioner seeks the application of a new rule of law, Respondent would be correct in maintaining

that he would be barred by *Teague v. Lane*, 489 U.S. 288 (1989).  However, this Court also finds

that Petitioner fails to state a claim for federal relief on other grounds.

The Vienna Convention on Consular Relations ("VCCR") is a treaty that "grants a foreign

national who has been arrested, imprisoned or taken into custody a right to contact his consulate and requires the arresting government authorities to inform the individual of this right 'without delay.'" *Maldonado v. State*, 998 S.W.2d 239, 246-47 (Tex.Crim.App. 1999) (citing Vienna Convention on Consular Relations, April 24, 1963, art. 36(1)(b), 21 U.S.T., 77, 100-01, 595 U.N.T.S. 261, 292 (ratified by the United States on November 24, 1969).

Petitioner, relying on the Supreme Court's 2005 decision in *Medellin v. Dretke,* alleges that the VCCR creates individual rights that are judicially enforceable.  Petitioner's reliance is misplaced.  Although the issue presented to the Supreme Court in *Medellin* was whether the federal courts were bound by the International Court of Justice's ruling that the Vienna Convention confers individually enforceable rights on detained aliens, the Court declined to decide the issue and, instead, dismissed the writ of certiorari as improvidently granted.  *Medellin v. Dretke*, 544 U.S. 660, 662 (2005).  Nor did the Supreme Court decide the issue when faced with it again in 2006. *Sanchez-Llamas v. Oregon*, _ U.S. _, 126 S.Ct. 2669, 2678, 165 L.Ed.2d 557 (2006) (holding that, even if it were to assume the VCCR created enforceable individual rights, suppression of evidence via the exclusionary rule was not prescribed by the treaty, nor was it an appropriate remedy for violation of the VCCR); *see also, Breard v. Greene*, 523 U.S. 371, 376 (1998) (noting that the Vienna Convention "arguably" confers a right to consular assistance on an alien following an arrest).  When reviewing a state court conviction in a federal habeas proceeding, the Supreme Court has made clear that it's holdings, as opposed to its *dicta*, are controlling. *See Carey v. Musladin*, _ U.S._, 127 S.Ct. 649, 653, 166 L.Ed 2d 482 (2006) ( "clearly established Federal law" refers to the holdings, as opposed to *dicta*).

Although the Supreme Court has not yet ruled on the issue, the Fifth Circuit has clearly

addressed the issue by holding that "the Vienna Convention does not confer individually enforceable rights," but instead only state-to-state rights and obligations. *Cardenas v. Dretke*, 405 F.3d 244, 253 (5th Cir. 2005); *see also Medellin v. Dretke*, 371 F.3d 270, 279 (5th Cir. 2004) ("the Vienna Convention, as interpreted by this Court in the past, does not confer an individually enforceable right"); *United States v. Jimenez-Nava*, 243 F.3d 192, 198 (5th Cir. 2001) ("The sum of [defendant's] arguments fails to lead to an ineluctable conclusion that Article 36 creates judicially enforceable rights of consultation between a detained foreign national and his consular office). Under current Fifth Circuit authority, Petitioner's claim is without basis.

Nevertheless, even assuming the VCCR creates judicially enforceable individual rights, Petitioner is not entitled to federal relief. The Supreme Court recently explained:

> [t]he violation of the right to consular notification, in contrast, is at best remotely connected to the gathering of evidence. Article 36 has nothing whatsoever to do with searches or interrogations. Indeed, Article 36 does not guarantee defendants *any* assistance at all. The provision secures only a right of foreign nationals to have their consulate *informed* of their arrest or detention–not to have their consulate intervene, or to have law enforcement authorities cease their investigation pending any such notice or intervention. In most circumstances, there is likely to be little connection between an Article 36 violation and evidence or statements obtained by police.

*Sanchez-Llamas*, 126 S.Ct. at 2681. Therefore, in order to obtain relief based on such a claim, it is necessary for the Petitioner to establish prejudice. *See Breard*, 523 U.S. at 377 ("Even were Breard's Vienna Convention claim properly raised and proved, it is extremely doubtful that the violation should result in the overturning of a final judgment of conviction without some showing that the violation had an effect on the trial."); *Rosales v. Bureau of Immigration and Customs Enforcement*, 426 F.3d 733, 737-38 (5th Cir. 2005), *cert. denied*, _ U.S. _, 126 S.Ct. 1055, 163 L.Ed.2d 882 (2006) (regardless of whether petitioner's right under the Vienna Convention are

protected under the United States Constitution, he was not entitled to habeas relief because he had not shown prejudice from the failure to advise him of his right to contact the Mexican consulate); *Cardenas v. Dretke*, 405 F.3d 244, 253-54 (5th Cir. 2005) (defendant failed to show that he was harmed by any lack of consular notification); *Sorto v. State*, 173 S.W.3d 469, 481 (Tex.Crim.App. 2005) (defendant failed to show causal connection or prejudice between failure and the voluntariness of his statement or the fairness of his trial).

In the present case, Petitioner makes no such showing of prejudice, nor does a review of the record reflect that the violation had any effect on the trial. Instead, the record reflects that Petitioner testified that he left Cuba, entered the United States, and has lived here since 1985. (T.T., Vol. 4 at 57:6-8). Although Petitioner spoke with an accent, he spoke in English and there is absolutely no indication that he had any difficulty understanding English or required the assistance of an interpreter. The record also established that the *Miranda* warnings were given (T.T., Vol.4 at 106:1-18; *Ex parte Raveiro*, Applic. No. 64,336-01 at 39-40; 50; cover); his statements to the police were given voluntarily (T.T., Vol. 4 at 105:1-5); the interviews ended when Petitioner asked them to stop (T.T., Vol. 4 at 95:16-19); and he denied committing the murder in the taped statements. Having failed in his burden to show that any failure to advise him of his right to contact the Cuban consulate caused him to do anything he would not otherwise have done or affected the fairness of his trial in any way, Petitioner's claim must be denied.

Moreover, despite his failure to establish prejudice, Petitioner is not entitled to the relief he seeks–namely, the suppression of the statements he gave police. The Texas Court of Criminal Appeals has rejected the argument that suppression of evidence for an alleged violation of the VCCR is an appropriate remedy. *Rocha v. State*, 16 S.W.3d 1, 13-19 ( Tex.Crim.App. 2000) (holding

10

violations of the VCCR do not create the type of personal rights the violation of which can be remedied in Texas criminal courts by the suppression of evidence under article 38.23).  Recently, the Supreme Court also clarified that the VCCR did not mandate suppression of the evidence and that it lacked supervisory authority to impose upon state courts the remedy of suppression of evidence for state police officers' violations of VCCR.  *Sanchez-Llamas*, 126 S.Ct. at 2678-79. Therefore, for this reason too, Petitioner's claim must be denied.

Finally, Petitioner is not entitled to federal habeas relief for yet another reason.  He raised this claim on direct appeal and also in his state habeas writ and, in both instances, the state court rejected the claim.  *Raveiro v. State*, 2005 WL 66483 at *5;  *Ex parte Raveiro*, Applic. No. 64,336-01.  Petitioner has not shown that the state court's determination of this issue was contrary to or involved an unreasonable application of federal law.  28 U.S.C. § 2254(d); *Carey v. Musladin*, 127 S.Ct. at 653.

The Court, therefore, **RECOMMENDS** that the Petition be **DISMISSED** on this issue.

*Trial Court Error Issues*

In his third and fifth claims, Petitioner alleges that the trial court erred in admitting a motel registration card and a taped statement he gave to police.  The Court will proceed to address each claim in turn.

a.  *Admission of Motel Receipt (Claim Three)*

Petitioner alleges that the trial court judge abused his discretion by admitting into evidence a motel receipt.  He claims that because the registration card was not filled out by a motel employee that it was not a business record for purposes of Rule 803(6) of the Texas Rules of Evidence.  In his Motion for Summary Judgment Respondent contends that Petitioner's claim should be dismissed

because it is foreclosed by the state court's factual findings on appeal and the admission of this evidence did not offend due process.  Resp's Mot. Sum. J. at 10-11.

In reviewing federal writs of habeas corpus, the law is clear that federal courts do not "sit to review the mere admissibility of evidence under state law" or errors in the application of state law.  *Little v. Johnson*, 162 F.3d 855, 862 (5th Cir. 1998), *cert. denied*, 526 U.S. 1118 (1999).  Instead, a federal court is limited to deciding whether the conviction violated the Constitution or statutes of the United States.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Evidentiary rulings of a state court do not warrant federal habeas corpus relief unless the errors are so extreme they constitute a denial of fundamental fairness under the Due Process Clause.  *Little v. Johnson*, 162 F.3d at 862; *see also Deaden v. McNeill*, 978 F.2d 1453, 1458 (5th Cir. 1992), *cert. denied*, 508 U.S. 960 (1993) (errors in state law, including evidentiary errors, are generally not cognizable in federal habeas corpus).  "Thus, only when wrongfully admitted evidence has played a crucial, critical, and highly significant role in the trial will habeas relief be granted."  *Little v. Johnson*, 162 F.3d at 862.

To prevail on claims of trial court error, a petitioner must establish that the error did more than merely affect the verdict.  *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984).  He must establish that it rendered the trial, as a whole, fundamentally unfair.  *Id.*  An error by the trial court renders the trial fundamentally unfair only if there is a reasonable probability that the verdict would have been different had the trial been conducted properly.  *See Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988).  Applying the federal harmless error standard, the error  must have "'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (*quoting*, *Kotteakos v. United States*, 328 U.S. 750, 776

12

(1946).  Accordingly, a petitioner is not entitled to federal habeas relief unless he can establish that the trial court error resulted in actual prejudice.  *See id.*  Petitioner has made no such showing.  Nor does this Court find that any such alleged error would have rendered the trial fundamentally unfair since the fact that Petitioner had rented the motel room had already been established through the testimony of Delena Kent.  Resp's Mot. Sum. J. at 10-11.

Nevertheless, Petitioner has also failed to establish that there was any error in admitting the motel receipt into evidence.  Reviewing the state court records, the Court observes that Petitioner raised this issue on direct appeal.  The Fourteenth Court of Appeals for Texas determined that the admission of the motel registration card, partially completed by the motel employee, was sufficient to meet the requirements of Rule 803(6) of the Texas Rules of Evidence and, as such, that the trial court did not abuse its discretion in admitting the evidence.  *Raveiro v. State*, 2005 WL 66483 at 5-6 (relying on *King v. State*, 953 S.W.2d 266, 270-71 (Tex.Crim.App. 1997)).  A state court factual findings are entitled to a presumption of correctness.  28 U.S.C. § 2254(e).  Petitioner has made no attempt to demonstrate any error by the Fourteenth Court of Appeals on this issue.  *Id.*  Furthermore, Petitioner has failed to establish that the state court decision in rejecting this claim was objectively unreasonable.  28 U.S.C. § 2254(d)(1)-(2).  Petitioner's claim is without merit.

### b.  *Admission of Recorded Statement (Claim Five)*

Petitioner also contends the trial court erred by allowing the admission of Petitioner's tape recorded statement to police because it was inaudible and it did not adhere to the requirements of Article 38.22(3)(a) of the Texas Code of Criminal Procedure.  Respondent maintains that the evidence was properly admitted.  Resp's Mot. Sum. J. at 13-14.

On direct appeal Petitioner alleged that the trial court abused its discretion and erred in

13

admitting the taped statement because it was inaudible.  In reviewing the matter, the Texas court of

appeals concluded that the trial court did not abuse its discretion in admitting a portion of the tape

since the State had established all of the predicates for admission of the tape, it was relevant, and

that the only problem with the tape recording was, not the quality of the tape, but in understanding

some of the words spoken by Petitioner due to his accent.  *Raveiro v. State*, 2005 WL 66483 at *8.

Petitioner has failed to show, nor can this Court find,[2] that the state court's decision was contrary

to or an unreasonable application of clearly established federal law and, as such, he is not entitled

to federal relief.

Petitioner's claim also fails because he has not shown that any error in admitting the portion

of the taped statement was a "crucial, critical, and highly significant" role in the context of the entire

trial.  *Little v. Johnson*, 162 F.3d at 682.  In the taped statements, Petitioner denied committing the

murder, however, his guilt was established though the testimony of Delena Kent and other evidence

linking him to the murder.  Having failed to establish that actual prejudice as a result of the alleged

error, federal habeas relief is not warranted.  *See Brecht*, 507 U.S. at 637 (error must be shown to

---

[2]  Reviewing the record, the Court observes that the trial court judge, before deciding on
the admissibility of this evidence, out of the presence of the jury, listened to a portion of the tape
and, after doing so, determined that there was nothing wrong with the tape's quality, or with the
recording equipment or operator.  (T.T., Vol. 4 at 53:25-25; 54:1-3).  The trial court judge
explained that the only problem with the tape was understanding some of what the Petitioner
said because of his accent.  (*Id*.).  Although a transcript of the tape was not prepared, the defense
informed the court that they had received a copy of the tape a year before the trial, thereby,
giving them ample time and opportunity to address the issue.  (T.T., Vol. 4 at 67:25; 68:1-7).
Finally, before deciding the admissibility of the tape, the trial court judge also considered Texas
case law  in which it was determined that a taped statement, which contained slurred or poor
speech, was generally not a sufficient basis to exclude the evidence.  (T.T., Vol. 4 at 72).  The
trial court, finding that the State had established all the predicates for admission of the tape and
that it was relevant, admitted the tape, over defendant's objection, into evidence and allowed a
portion to be played to the jury.  (T.T., Vol. 4 at 110:5-11).

have had substantial and injurious effect or influence in determining the jury's verdict).

Petitioner also claims that the trial court erred in admitting the tape because it did not adhere to the requirements of Texas law.  Petitioner's claim is without merit.  Federal law requires that the *Miranda* warnings be given and, as discussed, the record reflects that the warnings were not only given, but that the taped statement contained the warnings required by Texas law.  *Ex parte Raveiro*, Applic. No. 64,336-01 at 39-40; 50; cover.  Petitioner's conclusory statements to the contrary, unsupported by anything else contained in the record, are insufficient to support this claim.  *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

The Court, therefore, **RECOMMENDS** that Respondent's Motion be **GRANTED** on all Petitioner's claims of trial court error.

### *Ineffective Assistance of Counsel Issue*

Petitioner contends that he received ineffective assistance by counsel at trial due to numerous errors committed by his attorney.  The Sixth Amendment to the Constitution provides criminal defendants a right to effective assistance of counsel.  U.S. CONST., Amend. VI.  It does not, however, guarantee a criminal defendant "errorless representation."  *Moreno v. Estelle*, 717 F.2d 171, 176 (5th Cir. 1983).  To successfully state a claim of ineffective assistance of counsel, a petitioner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner's failure to establish either prong of Strickland necessarily requires a finding that counsel's performance was constitutionally effective.  *Id.* at 687.

When determining whether counsel's performance was deficient, courts will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance."  *Id.*

at 689; *see also, Wilkerson v. Collins*, 950 F.2d 1054, 1064 (5ᵗʰ Cir. 1992) (a reviewing court must

be highly deferential to the trial attorney's conduct and presume that assistance was reasonably

effective).  A petitioner must also overcome the presumption that the "challenged action 'might be

considered sound trial strategy.'" *Wilkerson*, 950 F.2d at 1064 (*quoting Michel v. Louisiana*, 350

U.S. 91, 101 (1955)).  "A conscious and informed decision on trial tactics and strategy cannot be the

basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates

the entire trial with obvious unfairness."  *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)

(*quoting Garland v. Magio*, 717 F.2d 199, 206 (5th Cir. 1983) (on rehearing)); *see also*, *Moreno*,

717 F.2d at 177 (counsel will not be deemed ineffective for failing to advance a defensive theory

when his decision was a reasonable strategic choice based upon a "professional assessment of the

plausibility of the defense and its likelihood of success at trial").  Therefore, when making that

determination, the court must examine the proceedings as a whole, giving due consideration to the

weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that

total setting.  *Strickland*, 466 U.S. at 690 (an ineffective claim is judged not by isolating a portion

of counsel's representation, but on the totality of the representation).

The second prong of the test requires a petitioner to show prejudice.  To establish prejudice,

a petitioner must establish that "there is a reasonable probability that, but for the counsel's

unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S.

at 694.  A "reasonable probability" means a probability sufficient to undermine the confidence in the

outcome.  *Id*.  A petitioner must "affirmatively prove prejudice." *Id*. at 693.  A petitioner cannot

satisfy the second prong of *Strickland* with mere speculation and conjecture.  *Bradford v. Whitley*,

953 F.2d 1008, 1012 (5ᵗʰ Cir. 1992).  Nor can a petitioner rely on conclusory allegations to satisfy

this prong.  *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982);  *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990).

Finally, when there has been an adjudication on the merits in state court, as there has been here, the state court's ruling is entitled to deference under § 2254(d) and a federal court may not grant habeas relief unless it decides that the state court's application of the *Strickland* standard was "objectively unreasonable."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 409-10 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341-42 (2003) (state factual determinations will not be overturned unless they are objectively unreasonable in light of the evidence).  In making this determination, a federal court's focus is on the state court's ultimate legal conclusion, not its reasoning.  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

Petitioner first claim is that counsel, while objecting on other grounds, failed to object to the taped statement because it did not contain the *Miranda* warning as required by Article 38.22(3)(a) of the Texas Code of Criminal Procedure.   Contrary to Petitioner's contentions, the record established, and the state court found, that the *Miranda* warnings were given and, while this portion of the tape was not played for the jury, the warnings were included at the beginning of each taped statement as required by Article 38.22.  (T.T., Vol.4 at 106:1-18).  *Ex parte Raveiro*, Applic. No. 64,336-01 at 39-40; 50; cover.  Therefore, any objection would have been futile.  Counsel was not deficient for failing to assert a baseless objection.  *Westley v. Johnson*, 83 F.3d 714, 722 (5th Cir. 1996).  Petitioner has failed to satisfy the first prong of  *Strickland* and, as such, his claim must be denied.

Petitioner next claims that counsel failed to re-iterate an objection in order to preserve appellate error when the State, after introducing the evidence (*i.e.*, the .22 caliber pistol recovered

in Petitioner's backyard), then later sought to admit it into evidence.  In particular, Petitioner, referring the Court to page 128 of Volume 4 of the trial transcript, asserts that "when the State offered the pistol and two photos of it, defense counsel did not renew the objection, stating "no objection."  Petitioner has misconstrued the record.  The portion of the trial transcript upon which Petitioner relies reflects only that State's Exhibit Nos. 15, 16, and 17 (*i.e.*, the photographs of where police found the .22 caliber pistol, wrapped in a towel, in Petitioner's yard), and not State's Exhibit No. 14 (*i.e.*, the .22 caliber pistol), were the Exhibits offered and admitted into evidence without objection.  (T.T., Vol. 4 at 128:7-18).[3]  Petitioner has failed to show counsel's conduct was deficient, nor has he, even assuming any such error, established prejudice.[4]

Petitioner's final claim is that during *voir dire* his attorney properly objected when the State improperly conveyed to the venire panel that he had prior convictions, but then, at the close of *voir dire*, withdrew his objection.  (T.T., Vol. 2 at 73-117).  A review of the record confirms that defense counsel objected to the State's  discussion of the possible effect that Petitioner's prior convictions might have, at the punishment phase of the trial, of increasing the minimum punishment.  Defense counsel argued:

Mr. Stevens: Your Honor, I have to object to this because in the

---

[3] The record reflects that the State showed the .22 caliber pistol, marked as State's Exhibit No. 14, to a witness.  Defense counsel objected to the pistol being shown to the witness on the grounds  that it was irrelevant and unduly prejudicial to Petitioner under Rule 404.  Defense counsel then, after taking the witness on *voir dire*, reiterated his objections to the pistol, but the trial court overruled his objections.  (T.T., Vol. 4 at 127:20-24).

[4] To the extent that Petitioner claims that counsel failed to object to the admission of the photographs (*i.e.,* State Exhibit Nos. 15, 16, and 17), as argued by Respondent, counsel could have reasonably believed that any such objection would have been overruled and, since the jury was aware that the .22 caliber pistol was not the murder weapon, Petitioner fails to establish how counsel's failure to object to the photographs of the gun prejudiced him under *Strickland*.

context and given the manner in which this is being presented, I think Counsel is clearly informing the panel that that [sic] is a live option here and he would not do so if it [prior conviction(s)] were not part of the evidence.  I think what has just happened is that the Counsel has effectively informed the Jury of a prior record in violation of the Court's orders in limine.  I have to object at this time.

The Court:  Actually, he [Prosecutor] did begin by telling them [panel] that is absolutely hypothetical; and he was using a lot of hypotheticals before that.  I think he was pretty clear about that.  If you want [to] show me some case law on that, I will let you do that as soon as we get back.

(T.T., Vol. 2 at 73: 1-16).  Following the Prosecutor's *voir dire*, defense counsel approached the

bench and stated outside the hearing of the panel, the following:

Mr. Stevens: Your Honor, earlier I informed this Court that I had looked up case law on the break.  I think Mr. Cox, the Prosecutor, was within the bounds of the law; however, since we resumed from the break, the Prosecutor spent virtually all of this time, I think 20 minutes, most of talking about scenarios about multiple convictions and albeit was a hypothetical sense.

I have named five jurors, Nos. 40, 42, 43, 30 and 48, all of whose responses make it very clear to me that they are now dealing with this case in terms of not hypotheticals but a fact established that there are multiple convictions.

I think what we have is too much of an admissible thing, and I think it prejudices my client's right to due process and due course under Federal and State Constitutions.   For that reason we would respectfully move for a mistrial at this time.

The Court:  Denied.

(T.T., Vol. 2 at 90:12-25; 91:1-6).  The trial court judge then later clarified the record with the

following:

The Court:  First of all, I want to put on the record that before lunch, before the lunch break, Mr. Stevens made an objection based on the Prosecutor asking hypotheticals on enhancements; and after lunch – I don't think we put this on the record, but after lunch I was

19

approached by both attorneys for the State and Defense.
At that time –

Mr. Stevens: I withdrew.

The Court: Based on the case law you did over lunch?

Mr. Stevens: Yes, correct.

(T.T., Vol. 2, 117:11-24).

As clarified by the trial court judge, defense counsel withdrew his first objection–a point which he made on the record after the Prosecutor concluded *voir dire*. However, contrary to Petitioner's claims, the record does not reflect that counsel's objection regarding the later statements by the Prosecutor, statements that defense counsel later asserted formed the basis of a mistrial, were also withdrawn. The fact that defense counsel withdrew his initial objection, based on his reasonable professional judgment after reviewing applicable case law, will not support a claim that his conduct was deficient. *Green v. Johnson*, 116 F.3d at 1122. However, even assuming it could, Petitioner has not established that he was prejudiced and his conclusory statements will not suffice. *Schlang v. Heard*, 691 F.2d at 799.

In conclusion, this Court finds that Petitioner has failed to establish that counsel's performance was constitutionally deficient. Moreover, while he makes conclusory statements that had counsel's performance not been deficient, he would have been acquitted, this is nothing more than speculation, which is clearly insufficient to establish prejudice. Finally, since Petitioner has not established, and the Court does not find, that the state court's application of *Strickland* was objectively unreasonable, federal habeas relief on this issues is not warranted.

The Court therefore **RECOMMENDS** that Respondent's Motion for Summary Judgment (Instrument No. 8) be **GRANTED** on all ineffective assistance of counsel issues.

*Confrontation Issue*

Petitioner contends that Officer Rennison was allowed to give "his own opinion as to what [P]etitioner was saying on the video taped confession when even the [trial] [c]ourt failed to understand such." Pet'r Memo. at 24. Petitioner claims that this violated his right to confront the witnesses against him because the officer was allowed to give hearsay about what Petitioner had said during the taped statement.

Respondent contends that Petitioner did not present this Sixth Amendment claim on direct appeal or in his state habeas writ and, as such, the claim is unexhausted and procedurally barred. Reviewing the grounds raised in his direct appeal, as well as the claims presented in his state habeas writ, the Court agrees that Petitioner did not raise this issue previously and has raised it for the first time in the instant writ. A prisoner is required to present his claims to the state's highest court before seeking federal relief. The inclusion of unexhausted claims renders a federal habeas petition a "mixed petition" which ordinarily must be dismissed without prejudice in its entirety. *Rose v. Lundy*, 455 U.S. 509, 533 (1982). However, it would be futile for Petitioner to return to state court to pursue these claims that should have been known to him when he filed his state writ. Under Texas law, such claims would be procedurally barred from consideration if they were submitted at this point. Tex. Code Crim. Proc. Art. 11.07, § 4. Although an exception exists when a prisoner demonstrates cause and prejudice for his failure to pursue state remedies, *Finley v. Johnson,* 243 F.3d 215, 219 (5th Cir. 2001), Petitioner in this case has made no attempt to do so. Under federal law, such unexhausted claims that are procedurally barred in state court are within a federal court's jurisdiction but are not cognizable because Petitioner failed to exhaust his state remedies. *Fuller v. Johnson*, 158 F.3d 903, 905-06 (5th Cir. 2001).

21

The Court **RECOMMENDS** that Respondent's Motion be **GRANTED** on this issue.

<u>**CONCLUSIONS**</u>

For all the reasons stated, this Court **RECOMMENDS** that Respondent's Motion for Summary Judgment (Instrument No. 8) be **GRANTED** and that the Petition for a Writ of Habeas Corpus of Julio A. Raveiro (Instrument No. 1) be **DISMISSED**.

The Clerk **SHALL** send copies of this Report and Recommendation to the Parties. The Parties **SHALL** have until **June 14, 2007**, to have written objections, filed pursuant to 28 U.S.C. § 636(b)(1)(C), **physically on file** in the Office of the Clerk. <u>The Objections **SHALL** be electronically filed and/or mailed to the Clerk's Office at P.O. Drawer 2300, Galveston, Texas 77553</u>. **Any Objections filed SHALL be contained in a written document specifically entitled "Objections to the Report and Recommendation of the Magistrate Judge"**, which will then be forwarded to the District Judge for consideration. Failure to file written objections within the prescribed time **SHALL** bar the aggrieved party from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this _____29th_____ day of May, 2007.

_____
John R. Froeschner
United States Magistrate Judge

22